# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**Apr 07, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of )
)
)
Apple iPhone seized on March 28, 2025 and booked as FBI )
Roseville Field Office Evidence Item 1B12 )
)
)

Case No.    2:25-sw-0303 AC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. § 922(g) | Unlawful Possession of Firearm & Ammunition |
| 21 U.S.C. § 844 | Simple Possession |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Matthew Weissenborn, FBI Special Agent
*Printed name and title*

Sworn to me and signed telephonically.

Date: _____April 7, 2025_____

City and state: _____Sacramento, California_____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

### AFFIDAVIT OF FBI SPECIAL AGENT MATTHEW WEISSENBORN

I, Special Agent Matthew J. Weissenborn, being duly sworn, hereby depose and state:

### PURPOSE

1. This Affidavit is made in support of a search warrant for the contents of a cellular phone belonging to Gabriel Erasmo Cabrera, as more particularly described Attachment A.

2. I assert that there is probable cause to believe that the item described above contains evidence of criminal violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm/ammunition), 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), and 21 U.S.C. § 844 (intentional possession of a controlled substance not otherwise authorized).

### BACKGROUND AND EXPERTISE

3. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) assigned to the Sacramento Field Office and have been so employed for approximately 12 years. I received training at the FBI Academy in Quantico, Virginia from October 2012 to March 2013. During my tenure with the FBI, I have worked in the areas of white-collar crime, counterterrorism, counterintelligence, cyber and violent crime. I have served as a Supervisory Special Agent at FBI Headquarters in Washington, D.C., and presently serve as a firearms instructor, in addition to working violent crime. Before joining the FBI, I practiced law for approximately five years.

4. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

5. This affidavit is based upon my own personal knowledge but also the knowledge and/or reports of other law enforcement officers (for example, an Agent with the California Department of Corrections and Rehabilitation). Where I describe statements made by other people (including other law enforcement officers), information contained in reports and/or other

documents or records in this affidavit, that information is described in sum, substance, and relevant part. Where I quote statements below, they are verbatim or near verbatim quotes of what was said. Where I insert images below, they are screen captures pertaining to the incident or evidence being described.

6.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

### *Gabriel Cabrera has previously been convicted of a felony offense and is therefore prohibited from possessing firearms and ammunition*

7.  On February 1, 2022, Cabrera was convicted of felony possession for sale, or purchase for purposes of sale, a controlled substance, in violation of California Health & Safety Code § 11351 (Superior Court of California, County of Sacramento, Case No. 21FE002911). He was placed on formal probation for a period of two years. His Order of Probation specified that he not knowingly have in his possession any firearm or ammunition and that he was advised and provided with a firearms prohibition packet.

8.  On September 20, 2022, Cabrera was convicted of felony possession of a controlled substance for sale, in violation of California Health & Safety Code § 11351 (Superior Court of California, County of Sacramento, Case No. 22FE010264). He was placed on formal probation for a period of two years.

9.  On March 1, 2023, Cabrera was convicted of felony inflicting corporal injury on a spouse, cohabitant, or dating relation, in violation of California Penal Code § 273.5(A) (Superior Court of California, County of Sacramento, Case No. 23FE001364). He was sentenced to 364 days jail and 2 years' probation.

10. On September 1, 2023, Cabrera was convicted of felony willful discharge of a firearm in a negligent manner in violation of California Penal Code § 246.3 and sentenced to two years in prison (Superior Court of California, County of Sacramento, Case No. 23FE005693).

11. On February 6, 2025, Cabrera was indicted on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (*see* 2:25-cr-00033-TLN).

### *Parole Search Leads to Additional Evidence of Cabrera Possessing a Firearm, Narcotics and Selling Narcotics*

12. On March 28, 2025, agents with the California Department of Corrections and Rehabilitation conducted a parole search of Cabrera at 515 Wisconsin Avenue in Sacramento, CA.  There were five people present at the residence (including a toddler/preschooler).

13. The owner of 515 Wisconsin Avenue is 71 years old, has no criminal history, has limited mobility, and medical issues.

14. Before parole agents arrived, one of them called Cabrera to provide him time to secure his large dogs.  As the agent entered the residence, Cabrera walked to the owner's room, opened the door and stated he was ensuring the dogs were secured.  When asked why he was not placing the dogs in the kennels located just inside the front door, Cabrera could not provide an answer.

15. During the parole search, parole agents found a number of items, including:

    a.  Cabrera's blue iPhone with red Louis Vuitton case retrieved from Cabrera's person by a parole agent;

    b.  25 rounds of Hornady 45 Colt Ammunition located in Cabrera's room;

    c.  A piece of paper—located in Cabrera's room—with what appeared to be instructions for a person to conduct drug sales stating in part "IF IM NOT AROUND OR IM SLEEP PRICES" followed by a list of prices for various weights of "WOP"[1] and "POWDER"[2] and what appeared to be instructions for repeat clientele who purchase narcotics on a regular basis;

---

[1] "WOP" is a slang term for fentanyl.
[2] "Powder" is a slang term for cocaine.

d. A blue box with a white powdery substance inside suspected to be fentanyl, multiple rubber bands and plastic bags, a scale, a clear container containing suspected fentanyl, a small yellow metal serving container with suspected fentanyl on it, a spoon used for ingesting narcotics through the nose and a pair of tweezers;

e. Multiple items of drug paraphernalia to include tin foil with a black substance and burn marks on it and multiple small clear bags found in Cabrera's room;

f. A semi-automatic Sig Sauer handgun with serial number 47A098240 loaded with an extended 9mm magazine and ammunition located in a dresser in the homeowner's bedroom; and

g. A bag with suspected narcotics, a straw and a small piece of tinfoil located in the homeowner's bedroom immediately next to Sig Sauer handgun.











16. Prior to a consent search of the homeowner's bedroom, she was asked whether there were any firearms or ammunition in the room. She reported she had a .38 revolver (which was also located during the search) and ammunition, and that there were no other firearms in the room. She did say that all other adult occupants of the home, including Cabrera, had access to the room and went in occasionally.

17. After the Sig Sauer semi-automatic pistol and suspected narcotics were recovered, the homeowner indicated the only reason for finding such items would be if one of the other people present had placed them there.

18. All other adult occupants initially denied ownership of the firearm and suspected narcotics. Then, a young adult female occupant claimed ownership of the pistol and suspected narcotics. After Cabrera was arrested by the FBI, the female recanted, saying the gun and suspected fentanyl in the homeowner's room were not hers. She stated that she could not tell the parole agent in front of Cabrera that the firearm and suspected fentanyl were not hers. When questioned further, the female would not say why she could not tell the parole agent this fact in front of Cabrera. She also said she did not know if the handgun and suspected fentanyl belonged to Cabrera. The female did indicate, although not explicitly admit, that the blue box was hers.

19. Cabrera told a parole agent the blue phone removed from his pocket during the search was his phone. Cabrera provided the passcode to unlock the phone.

20. In connection with the parole search, the child's mother agreed with the assertion of a parole agent that the child was not safe in her care. A family member came to retrieve the child and told a parole agent that the family had been looking for the child for weeks and that the child's mother is a drug addict. One of the parole agents spoke with the child's grandmother, who advised that the child's mother had said Cabrera is a drug dealer. She further advised that the mother is addicted to multiple substances and nearly died from fentanyl in the past.

***Arrest and Interview of Cabrera***

21. As the parole search was coming to an end, FBI agents arrived in front of the residence, took Cabrera into custody and took custody of the above-referenced evidence.

22. I conducted a *Mirandized* interview of Cabrera. After Cabrera indicated that he understood his rights, and after obtaining identifying information regarding Cabrera and his phone number, I reiterated to Cabrera that he did not need to talk to agents, but that if he did, that he should not lie to agents because doing so was a federal crime if it was something important to agents' case and it would make the situation worse. Cabrera was advised it was fine if he did not wish to speak to agents, but not to lie to agents.

23. Cabrera advised he did not have any sources of income at the moment, but that he used to do construction and made reference to carpentry and concrete.

24. Cabrera asked what the case was about and was shown a screen capture showing him holding an Anderson Manufacturing rifle, and indicated that when he "went down on" on his last case the state had "all these videos." He expressed that he had a picture of it in his last discovery. Cabrera said: "that's a Kellet motion right there… they've had this evidence before." Cabrera was shown an image of a grey Glock 43 pistol and was advised that it reflected charge number 2. Cabrera responded: "they had that. They've already had that. That s**t is so old bro." Cabrera also stated: "I have a picture of it, with two guns. One in one hand, and the other in the other hand, sitting in a passenger seat. They have it in my old discovery on a, on a [drug] sales charge… but they didn't pursue it."

 

25. Cabrera indicated the rifle video was taken in about 2022 and that he did not remember where he took the video.  He agreed that if I thought it was taken at a particular place (a former friend of Cabrera's), then more than likely it was.  Cabrera said he did not remember how he got the firearm.  Eventually Cabrera indicated he did not want to answer any questions about "this specifically" because he felt like it was incriminating and not going to help him.  Cabrera also indicated he did not remember this point in time in his life and that he was "high on zans back then."

26. Cabrera indicated he had been convicted of two or three felonies and that the first one was when he approximately 18 [note: on the date of the interview Cabrera was 22].

27. I then reviewed a form advising Cabrera of Title 18 U.S.C. § 1001.  He expressed that he understood it was a crime to lie to agents.  Cabrera further indicated that in light of this understanding he did not want to add or change anything to what he had told agents and that everything he had told agents was true.

28. Before being taken to the Sacramento County Jail, Cabrera asked if he could get numbers from his phone and provided me with contact names from his phone for which he wished to have numbers.  I retrieved those numbers for Cabrera from the blue iPhone taken from Cabrera's pocket and wrote them on a piece of paper.

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

***Cabrera's phones have historically contained evidence of his firearm and/or drug possession***

29. The following images were discovered in a phone seized on June 21, 2022, and attributed to Cabrera.

  

30. The following images were discovered in a phone seized on January 26, 2023 and attributed to Cabrera (the final image was sent to an associate of Cabrera's, which I believe to depict, in addition to the grey pistol, controlled substances in the form of blue M/30 pills containing Oxycodone and/or fentanyl, white Xanax bars and possibly cocaine (in the lower right corner).

 

9



31. I also note that per another law enforcement report, contained on this phone was a video taken on March 29, 2022, which captures a large quantity of light shaded blue M/30 pills on a 100 dollar bill next to another large quantity of darker shaded blue M/30 pills. Per the report, Cabrera states the following in videos:

    a. "These mutherfu***s right here, I'm letting them go for 4.50. 4.50, personal experience, these hit harder, these hit harder they are just a little bit more white, they hit harder, they're shiny, everything all away around is good about them… From my experience and other people's experience, these ones hit harder right so it's up to you all. I need to know by the end of tonight what I need to do and who I should f**k with. Give me some input, I'll pull up on a couple of you all, if you want to try some testers for a couple of dollars, but let me know. These ones I'm sell for 8, 7."

## ADDITIONAL INFORMATION REGARDING
## DRUG TRAFFICKING AND PHONES

32. Based on communication with an FBI agent experienced in drug related investigations, I have been informed of the following:

10

a. Drug traffickers keep stored messages and telephone numbers relating to their trafficking activities within electronic devices.  Further, drug traffickers often keep photographs and audio/video recordings depicting themselves and their associates, as well as their assets and controlled substances.

b. Persons involved in the distribution of controlled substances often maintain records and ledgers listing their trafficking activities in these same places.  These records are kept to keep track of the ordering, purchasing, storage, distribution and transportation of controlled substances.  After drugs are sold, documentary records and ledgers often remain for long periods of time to memorialize past transactions, track the status of accounts receivable and accounts payable, and to record the names and telephone numbers of suppliers, customers and co-conspirators.  These records are often maintained not only on paper, but also as electronic or digital data.

c. Individuals involved in drug trafficking often use telephones, cellular telephones, electronic pagers, beepers, e-mail devices, text messaging, and voice mail and/or answering machines to conduct their business.

d. Persons engaged in drug trafficking and/or money laundering frequently retain records of their transactions within their residence, place of business, rented storage units, vehicles, or other places under their control.  These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other records.  Records of this kind are also often stored on computer media.

e. Individuals involved in drug trafficking frequently store their drugs, drug proceeds, weapons, and other contraband in rooms and areas of their residences that appear to belong to, are controlled by, and/or are accessible to other occupants, including for example, bedrooms belonging to children, other family members, or roommates, in an effort to conceal the evidence from law enforcement and to disguise their ownership and control of the contraband in the event that it is seized.

## CELLULAR PHONES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

33. As described in Attachment B, this application seeks permission to search for items in data in a cellular telephone.  The warrant applied for would authorize the seizure of electronic storage media, electronically stored information from that storage media, and potentially, the copying of electronically stored information from that storage media, all under Rule 41(e)(2)(B).

34. *Forensic Evidence.*  As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how the phone was used, the purpose of its use, who used it, when it was used, and/or where it was used.

35. Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of criminal conduct under investigation, thus enabling the United States to establish and prove each element, or alternatively, to exclude the innocent from further suspicion.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information that can indicate when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or

exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

36. The process of identifying the exact files, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

37. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

38. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying the phone and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of the internal memory to human inspection in order to determine whether it is evidence described by the warrant. The authorization of this examination extends to any agency or party working at the direction or request of the FBI, regardless of the jurisdiction or physical location of the agency or party.

## **CONCLUSION**

39. Based on the above information, there is probable cause to believe that the cellular phone described above and in Attachment A contains evidence of criminal violations of 18 U.S.C. § 922(g)(1) (felon in possession of firearm/ammunition), 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), and 21 U.S.C. § 844 (intentional possession of a controlled substance not otherwise authorized).

40. I hereby request that this Court issue a search and seizure warrant for such evidence in the contents of the cellular telephone.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/ Matthew J. Weissenborn
MATTHEW J. WEISSENBORN
FBI Special Agent

Sworn and Subscribed to me telephonically,
on April 7, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

J. DOUGLAS HARMAN
Assistant United States Attorney

## ATTACHMENT A

### *Location to be searched*

The blue iPhone in red Louis Vuitton case seized during the parole search of Gabriel Cabrera on March 28, 2025, and presently booked into evidence at the Roseville Field Office of the FBI as item 1B12 in this matter (including all memory cards immediately associated/attached with the device such as subscriber identification module (SIM) cards and memory cards, and data that the phone may retrieve via cellular network from a computer based in another location).

## **ATTACHMENT B**

*Items to be seized*

This search warrant grants authority to seize all evidence of violations of 18 U.S.C. § 922(g)(1) (felon in possession of firearm/ammunition), 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), and 21 U.S.C. § 844 (intentional possession of a controlled substance not otherwise authorized), including all of the items set forth below:

1. Records, information, communications, images, videos and writings related to the possession, or attempted possession, of firearms or ammunition by Gabriel Cabrera;

2. Records, information, communications, images, videos and writings related to the purchase, possession, sale or distribution of controlled substances by Gabriel Cabrera;

3. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on servers and associated with the mobile telephone, including:
   a. Incoming call history;
   b. Outgoing call history;
   c. Missed call history;
   d. Outgoing text messages;
   e. Incoming text messages;
   f. Draft text messages;
   g. Telephone book;
   h. Data screen or file identifying the telephone number associated with the mobile telephone searched;
   i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
   j. Voicemail;
   k. User-entered messages (such as to-do lists); and
   l. Stored media such as photographs, video, and audio recordings.

4. Any passwords used to access the electronic data described above;

5. Evidence indicating who, how, when and where the cellular telephone was accessed or used, to determine the geographic and chronological context of

16

cellular telephone access, use, and events relating to the crimes under investigation and to the cellular telephone user; and

6. Evidence indicating the cellular telephone user's state of mind as it relates to the crimes under investigation.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate contraband, evidence, and instrumentalities of the crimes described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>Apple iPhone seized on March 28, 2025 and booked as<br>FBI Roseville Field Office Evidence Item 1B12 | )<br>)<br>)  Case No.　2:25-sw-0303 AC<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:　　Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____April 21, 2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.　☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐　Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐　for _____ days *(not to exceed 30)*　☐　until, the facts justifying, the later specific date of _____ .

Date and time issued:　____April 7, 2025 @ 8:50 a.m.____

City and state:　　____Sacramento, California____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____        _____
          Signature of Judge                                      Date

## ATTACHMENT A

### *Location to be searched*

The blue iPhone in red Louis Vuitton case seized during the parole search of Gabriel Cabrera on March 28, 2025, and presently booked into evidence at the Roseville Field Office of the FBI as item 1B12 in this matter (including all memory cards immediately associated/attached with the device such as subscriber identification module (SIM) cards and memory cards, and data that the phone may retrieve via cellular network from a computer based in another location).

# ATTACHMENT B

*Items to be seized*

This search warrant grants authority to seize all evidence of violations of 18 U.S.C. § 922(g)(1) (felon in possession of firearm/ammunition), 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), and 21 U.S.C. § 844 (intentional possession of a controlled substance not otherwise authorized), including all of the items set forth below:

1. Records, information, communications, images, videos and writings related to the possession, or attempted possession, of firearms or ammunition by Gabriel Cabrera;

2. Records, information, communications, images, videos and writings related to the purchase, possession, sale or distribution of controlled substances by Gabriel Cabrera;

3. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on servers and associated with the mobile telephone, including:
   a. Incoming call history;
   b. Outgoing call history;
   c. Missed call history;
   d. Outgoing text messages;
   e. Incoming text messages;
   f. Draft text messages;
   g. Telephone book;
   h. Data screen or file identifying the telephone number associated with the mobile telephone searched;
   i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
   j. Voicemail;
   k. User-entered messages (such as to-do lists); and
   l. Stored media such as photographs, video, and audio recordings.

4. Any passwords used to access the electronic data described above;

5. Evidence indicating who, how, when and where the cellular telephone was accessed or used, to determine the geographic and chronological context of

16

cellular telephone access, use, and events relating to the crimes under investigation and to the cellular telephone user; and

6. Evidence indicating the cellular telephone user's state of mind as it relates to the crimes under investigation.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate contraband, evidence, and instrumentalities of the crimes described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.